**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

**v.**

**CADILLAC WIRE CORP. and Steel, Metals, Alloys and Hardware Fabricators and Warehousemen, Local 810, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Respondents.**

No. 309, Docket 26688.

United States Court of Appeals Second Circuit.

Argued April 12, 1961.

Decided May 10, 1961.

Glen M. Bendixsen, Stuart Rothman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, Allison W. Brown, Jr., Attorney, National Labor Relations Board, Washington, D. C., for the Board.

Sol E. King, New York City, for the Cadillac Corporation.

Harry Weinstock, Henry Brickman, New York City, Weinstock & Tauber, New York City, of counsel, for the Union.

Before FRIENDLY, HAND and MEDINA, Circuit Judges.

HAND, Circuit Judge.

This case comes up on a petition of the Labor Board to direct the Cadillac Wire Corporation and Local 810 of the Teamsters Union "to cease and desist" allowing new members of the union less than thirty days within which to pay their initiation fees and any dues payable within that period. The order also directed both parties to reimburse members admitted to the union for all dues collected less than thirty days after their admission; and for initiation fees if they had remained at work for less than thirty days.

The facts on which the controversy turned were as follows. The company, a manufacturer of wire products has a factory in Yonkers, New York, where it employs forty or fifty men. It has a "hiring hall" in Manhattan, not conveniently accessible to its factory, and for that reason it has arranged with the union of which all its employees are members that, when an applicant wishes to be employed he may go directly to the Company's general manager in Yonkers who examines him and passes on his qualifications. If he approves the applicant, he accepts him and gives him two cards, one of which is a "federal income tax form," and the other an application to be admitted to the union containing "a dues checkoff authorization card." These he tells the applicant to take to the Union's "Shop Steward," who explains to the applicant what will be deducted from his pay for initiation fee and dues. The "Shop Steward" tells the applicant that he has to sign the cards "within a day or two" and the applicant almost always signs within two days. The Board held that this practice was a denial of the delay to all applicants of a period of thirty days granted by the proviso to § 8(a) (3) of the National Labor Relations Act, 29 U.S.C.A. § 158(a) (3).

Section 8(a) (3) makes it an unfair labor practice for an employer "by discrimination * * * to encourage or discourage membership in any labor organization" and if the statute had stopped there the employer in the case at bar would have violated that section by "encouraging membership" in Local 810. However, Congress attached a proviso to this section which declared that the "Act" shall not "preclude * * * an agreement with a labor organization * * * to require as a condition of employment membership therein on or after the thirtieth day following the beginning of such employment;" and in the case at bar this gave an employee thirty days after he began work within which to join Local 810. The Board held that the employer and the union were guilty under § 8(a) (3) because employees were not allowed thirty days within which to decide whether to join the union after they had been employed.

█ The testimony is not as clear as we could wish, but it certainly was enough to justify the Board's conclusion that applicants understood before they would be allowed to work that they must accept liability for the membership due of $4 for the first thirty days and $25 for the initiation fee. The "Shop Steward" says that he told applicants to return the card "next day or the day after;" and the "General Manager" told them that there would be "partial amounts" deducted from the second, third and fourth weeks' wages to make up the initiation fee. The first month's due was also deducted from the wages earned; because, when the applicant "is in the union for thirty days, he automatically owes four dollars for that month, union dues." Therefore during the first thirty days of employment the employee paid not only an initiation fee, but one month's dues. We do not see how in the face of the language and of uniform conformity with it, there can be any doubt that it was at least permissible for the Board to find that applicants were told that they must concede the withholding of these sums from their wages during the first month. The Board is affirmed on the issue of an "unfair labor practice."

As to the issue of reimbursement the Supreme Court on April 17 in Local 60 etc. v. N. L. R. B., 81 S.Ct. 875, 879, handed down a decision holding that the "Brown-Olds" doctrine may not be used "punitively," but only "remedially." In the case at bar the Board ordered reimbursement of any initiation fee deducted within thirty days after the employee began work, provided the employees did not continue to work for thirty days. The Board was right in reimbursing no other fees, because, although the fee was not due until the period had elapsed, it then did become due and it made no difference if it had been previously paid.

We understand the Board's order to require the respondents to reimburse all employees for union dues assessed against them during the first thirty days after they were employed, even though they may have paid their initiation fee meanwhile. Payment of the fee alone may, or may not, have made the employee a member of the union for the first thirty days; that question we need not answer. In either case the statute is peremptory that the employee, if not coerced, has this period free of dues to the union; it is a condition upon the right of the union and the employer to take him on at all. Such a "reimbursement" is not "punitive," the reason for distinguishing between it and an initiation fee is that the fee covers permanent membership, while any benefit from the first due is limited to the period for which it is assessed. Reimbursement is therefore "remedial" within the language of Harlan, J., in Local 60, etc. v. N. L. R. B., since it enables "the Board to take measures designed to recreate the conditions and relationships that would have been had there been no unfair labor practice." By hypothesis the unlawful payment of the due was coerced, and the repayment of the whole amount merely put the employee in the same position he would have been in had the statute been obeyed.

However, as in our decision in National Labor Relations Board v. Revere Metal Art Co., 280 F.2d 96, 101, we will not direct the Board to make an inquiry in each case how far the employee was coerced. We there said: "Though the Board might have excluded the employees who had voluntarily signed union cards before September 1 from the reimbursement provision, it did not abuse its discretion in not doing so since these employees may well have remained in the union only because of the status it had unlawfully acquired. For the courts to require a determination of the attitude of each employee in every case would impose impossible administrative burdens."

The Board's order will be enforced.